The Vice-Chancellor.
The assignment of Hamilton H, Jackson, purports to convey all his real estate, of which a very large amount is particularly described in the instrument. It appears that he was insolvent at the time it was made, and had no personal property of any considerable value, either liable to execution at law, or in any other mode, to the payment of his debts.
The trusts of the assignment were, to sell so much of the lands as might be necessary to carry it into effect, at public or private sale, and with an unlimited discretion as to the terms of sale; after paying the charges and commissions, to discharge all taxes and assessments and interest on mortgages; to pay outstanding judgments and decrees against the assignor, in the order of their legal priority; to pay certain preferrred creditors and indorsed promissory notes of the assignor; and finally to reconvey to him, after the full execution of the previous trusts, all the premises which should not have been sold by the assignees.
In the case of Goodrich v. Downs, (6 Hill, 438,) an assign *556 ment of personal property liable to execution, precisely like this one, with the single exception that the property was to be sold at all events, and the surplus proceeds, if any, returned to the assignor; was decided by the supreme court, to be fraudulent and void on its face, as against creditors.
The assignees attempt to distinguish the case before me from Goodrich v. Downs, on several grounds. Thus it is said, first, that the statute expressly avoids, as against creditors, all transfers of personal property, made in trust for the use of the person making the same; while there is no such provision in respect of real estate.
As to this, it may be answered, that the statute avoids such transfers, because they are fraudident; and the next title in the revised statutes, declares all assignments of lands to be void, which are made with the intent to hinder, delay or defraud creditors. And as a further answer, it may be observed, that all transfers and conveyances made to defraud creditors, whether of real or personal property, were void by the common law, and would be void at this day, without the aid of any statute on the subject.
Next, it is contended that this assignment is justified by the statutory provisions as to trusts; and that there is nothing to prevent the creditors of H. H. Jackson, from proceeding to reach his residuary interest under it, as a legal estate.
It is true, the revised statutes have expressly authorized, what were just as lawful before, assignments of real estate in trust to sell the same for the benefit of creditors. If any change were thereby made in the law, it was restrictive of the purposes for which such trusts were previously deemed legal. But it is for the benefit of creditors only, and not for the benefit of a portion of the creditors and of the assignor him,self, that the revised statutes authorize trusts to sell lands; and all trusts not allowed by those statutes are abolished.
Then as to the operation of this trust upon the rights of creditors who are not provided for. Jackson’s residuary interest is not a legal estate, within the sixty-second section of the article of the statutes relative to uses and trusts, as was suggested by the assignees counsel; because, first, that section does not relate *557 to any estate or interest embraced in the trust, as Jackson’s is expressly; and secondly, because the sixtieth section of the same article, vests the whole estate in the trustees, and positively declares that the beneficiary shall take no estate or interest in the lands, but may enforce the performance of the trust, in equity.
There is no resulting trust in this case. And as to the forty-seventh section of the article relative to uses and trusts, the provisions of the forty-eighth section prevent its application to the interest of the assignor.
As to the argument that the residuary provision in this assignment, declares nothing more than the law would require of the assignees if it were not inserted; it does not relieve the case from the difficulty. If its insertion be held to render the assignment void upon its face, an assignment omitting the clause would be equally void, upon proof that there were creditors um provided for, and that the lands transferred exceeded, or were by the parties believed to exceed, in value, the debts for which it was made.
It was contended that if this trust deed were held to be void, the same might be held of every mortgage executed by one having creditors other than the mortgagee.
This argument is entirely groundless. In the instance of a mortgage, the legal estate remains in the mortgagor, and his title to the land may be sold on execution as readily as it could before the mortgage was executed. So of a deed intended as a security, though absolute on its face. The grantor retains a legal title, and a judgment recovered against him will be a lien.
On the other hand, a conveyance in trust for the benefit of creditors, vests the whole estate, legal and equitable, in the assignees. The assignor, entitled to the residue, has no estate or interest in the lands. He has nothing but an equity ; a right in action against the trustees.
As to the idea that H. H. Jackson retained a legal estate, or any tangible interest, in any given lots or parcels of land ;• aside from the positive enactments of the statute, it is manifestly at variance with the whole scope of the assignment. If there were to be an ejectment for one of the lots, the trustees alone would maintain it. If a title were to be made under their contracts to *558 sell, they alone would execute the conveyance; nor could a purchaser require of them to procure Jackson to join in the deed.
These considerations dispose of the distinction taken between this case and Goodrich v. Downs, founded on the fact that in the latter there was to be an absolute conversion of the property, before the surplus was to be restored to the assignor.
The principle of the decision in that case, is in my view directly applicable to the one before me, and avoids the assignment. My conclusion is made without regard to the personal property of Jackson.
The effect of such an assignment as this, if valid, would inevitably hinder and delay the creditors who were "not preferred. The whole estate is in the trustees. No judgment can become a lien, no execution will reach the debtor’s residuary equity. If the creditor, after exhausting his legal remedies, should proceed in chancery, he may it is true, obtain a transfer of this equity to a receiver. But it will necessarily be an inconvertible, intan gible interest, utterly unsaleable in market. The large discretion reposed in the trustees, will be an insuperable obstacle to any compulsory proceeding against them, founded upon the equity of the assignor, within any definite period. The property is effectually sequestered from the pursuit of the creditors at large, until the usually tardy proceedings of the trustees shall have satisfied the preferred debts ; and with the heavy charges, the careless and oftentimes improvident execution of the trusts, and the accumulation of taxes on the property and interest on the debts ; the sequestration would in too many instances prove to be as total as it was efficient. I speak of these trusts in general ; having no reason to doubt that the assignees in question, would discharge any duty which they would assume, with care, skill and fidelity.
In my judgment, the assignment must be declared void as against the creditors of H. H. Jackson ; for the reasons which I have thus briefly assigned. The order however must provide for the entire ratification of the acts of the assignees, and for their indemnity. Manifest equity requires, what would probably follow as a necessary legal consequence of setting aside the *559 assignment, that the creditors who had liens on the property, and who released to the assignees, should be made good or reinstated. Probably the best course for all the creditors, would be to vest those liens in the receiver, and enable him to sell the real estate and give an unincumbered title. The details of this branch of the case may be adjusted on settling the form of the order. The motion to dissolve the injunction must be denied, and the motion for a receiver is granted. On the former, the complainant is entitled to ten dollars costs.(a)

 The defendants appealed to the chancellor, by whom the order was affirmed, June 28, 1848 ; and the court of appeals in October 1849, affirmed the decision of the chancellor.